UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT J. HAYWARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-30046-MGM |
| | ) |
| COMMONWEALTH OF | ) |
| MASSACHUSETTS, CITY OF WEST | ) |
| SPRINGFIELD, RONALD P. CAMPURCIANI, | ) |
| MARK SYPEK, AND DANIELLE (?)[1], | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
MOTIONS TO DISMISS AND PLAINTIFF'S SEVEN MOTIONS
(Dkt. Nos. 7, 13, 20, 21, 22, 23, 24, 25, 29)

ROBERTSON, U.S.M.J.

I.      INTRODUCTION

    Plaintiff Robert J. Hayward ("Plaintiff"), who is proceeding pro se, challenges the denial

of his application for a Massachusetts license to carry ("LTC") a firearm.  In his sixteen count

---

[1] Plaintiff did not know this West Springfield police officer's last name when he filed the
complaint.  "Rule 10(a) of the Federal Rules of Civil Procedure states that the title of the action
in the complaint must include the names of all the parties."  *Stratton v. City of Boston*, 731 F.
Supp. 42, 45 (D. Mass. 1989).  Although "a plaintiff may bring suit against a fictitious or
unnamed party where a good-faith investigation has failed to reveal the identity of the relevant
defendant and there is a reasonable likelihood that discovery will provide that information,"
*Martínez-Rivera v. Sánchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007), a party is entitled to dismissal
if a reasonable inquiry would have produced the party's name.  *See Stratton,* 731 F. Supp. at 45
(dismissing case against unnamed police officers because plaintiff could have obtained their
names through a reasonable inquiry, but allowing leave to file an amended complaint).  The
Municipal Defendants have revealed that the officer's full name is "Danielle Eickelberg" (Dkt.
No. 8 at 1).  Officer Eickelberg does not seek dismissal on the ground that Plaintiff failed to
make reasonable efforts to identify her.

complaint (Dkt. No. 1), which names as Defendants the Commonwealth of Massachusetts ("Commonwealth"), the City of West Springfield ("City"),[2] West Springfield Police Chief Ronald P. Campurciani, West Springfield Police Captain and Acting Chief Mark Sypek, and West Springfield Firearms Officer Danielle Eickelberg (collectively, "Municipal Defendants"), Plaintiff alleges that, by denying his LTC application on the basis that he was "unsuitable," the Commonwealth and the Municipal Defendants conspired to deprive him of his Second Amendment, equal protection, and due process rights (Counts 1 through 5), and conspired to commit extortion (Counts 6 through 10).  Plaintiff further contends that the three police officers committed treason (Counts 11 through 13), and breached their duties of trust as public officials (Counts 14 through 16).

The Commonwealth's and the Municipal Defendants' motions to dismiss the complaint are now before the court (Dkt. Nos. 7 and 13).  While the motions to dismiss were pending, Plaintiff filed the following seven motions:  "Motion to Suspend British Crown Copywright" (sic) (Dkt. No. 20); "Motion for this Court to Acknowledge 'This Constitution for the United States of America' is the Supreme Law of this Land; the Commonwealth of Massachusetts; and Especially this Court" (Dkt. No. 21); "Motion to have this Court Acknowledge that the 'Bar Association,' in all its Corporate [E]ntities is an Unlawful Corporate Monopoly . . ." (Dkt. No. 22); "Motion for the Court to Enter a Guilty Verdict Against All Defendants" (Dkt. No. 23); "Motion for the Court to Acknowledge the [Individual] Defendants . . . are in Fact:  'Individuals of Unsound Mind' and 'Incompetent'" (Dkt. No. 24); "Motion to Acknowledge that all State, County, and Municipal Magistrates and Officers of Government Vested with Authority have

---

[2] The City notes that it is formally known as the Town of West Springfield, but agrees to be referenced as the City in order to be consistent with the language used in Plaintiff's complaint (Dkt. No. 8 at 1 n.1).

Vol[u]ntary [sic] Waived their Right to Remain Silent and/or Refuse to Answer Questions" (Dkt. No. 25); and motion to enjoin the Commonwealth from enforcing a summons to Plaintiff to report for jury duty in Hampden County on June 20, 2016 (Dkt. No. 29).

Defendants' motions to dismiss and Plaintiff's motions have been referred to this court for a report and recommendation (Dkt. Nos. 16 and 34). *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(b). For the following reasons, this court recommends that the motions to dismiss (Dkt. Nos. 7 and 13) be ALLOWED, and that Plaintiff's motions (Dkt. Nos. 20, 21, 22, 23, 24, 25, 29) be DENIED.

II.    FACTUAL BACKGROUND[3]

On November 23, 2015, after Plaintiff took a gun safety course in order to become a master gunsmith, he completed an application for a Class A LTC, signed it, and submitted it along with the $100 fee to West Springfield Police Officer Eickelberg (Dkt. No. 1 at 5; Dkt. No. 8-1 at 2, 4).[4] Page 2 of the application contains a series of fourteen questions that required

---

[3] In ruling on a motion to dismiss, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted to one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Id.* (quoting *Watterson*, 987 F.3d at 3). Here, Plaintiff's copy of the unsigned, handwritten LTC application, dated November 22, 2015, is attached to his complaint (Dkt. No. 1-1). The court also considers the following documents submitted in support of the Municipal Defendants' motion to dismiss, which are of undisputed authenticity, central to Plaintiff's claim, and sufficiently referenced in the complaint, *see Watterson*, 987 F.3d at 3: a signed, handwritten copy of parts of Plaintiff's LTC application, dated November 22, 2015 (Dkt. No. 8-1); "New/Renewal Application Warning" about the application's question number 4, signed by Plaintiff and dated November 25, 2015 (Dkt. No. 8-2); a signed, typed copy of Plaintiff's LTC application, dated November 25, 2015 (Dkt. No. 8-3); and a letter to Plaintiff from Chief Campurciani, dated January 8, 2016, denying Plaintiff's Resident Class A Large Capacity License to Carry Firearms Application (Dkt. No. 8-4).

[4] Plaintiff alleges that Officer Eickelberg refused to give her name (Dkt. No. 1 at 5, 6).

Plaintiff to answer each by checking a "yes" or "no" box (Dkt. Nos. 8-1 at 3, 8-3 at 3).  Question

number 4 says:  "Have you ever been arrested or appeared in court as a defendant for any

criminal offense?" (*id.*).  Plaintiff answered "no" to question 4 on both his handwritten and typed

applications, which he signed (Dkt. Nos. 8-1 at 3-4, 8-3 at 3-4).  Language that appears above the

applicant's signature line on the form warns that any person who "knowingly files an application

containing false information" is subject to a fine or imprisonment or both and "false answer(s)"

will lead to the denial or the revocation of the LTC (Dkt. Nos. 8-1 at 4, 8-3 at 4).  By signing the

application under the pains and penalties of perjury, Plaintiff declared that the information on the

application was "true and complete to the best of [his] knowledge and belief" (*id.*).

When Plaintiff submitted the typed application on November 25, 2015, he also signed

and dated a West Springfield Police Department "New/Renewal Application Warning"

("Warning Form"), which addressed Question # 4 on the application as follows:

> <u>QUESTION # 4</u>:  Have you EVER APPEARED (not necessarily arrested) in any court as a defendant for any criminal or criminal traffic offense?  You do not have to put down non-criminal traffic offenses.
>
> Having been arrested or convicted of a crime does not necessarily prohibit you from getting an LTC or FID.[5]  <u>NOT PUTTING IT DOWN DOES</u>.
>
> Understand that *"EVER APPEARED"* includes all adult and juvenile appearances. It does not matter if you were found not guilty or if the charges were dismissed or continued without a finding – you HAVE to put it down.  If you do not answer truthfully we will find out, no matter how long ago.  If you have a sealed record, let us know.  We

---

[5] "FID" references a firearms identification card.  An FID card, which is "distinct" from an LTC, "allows the holder to own, transfer, or possess a firearm in his residence or place of business." *Commonwealth v. Gouse*, 965 N.E.2d 774, 785 n.14 (Mass. 2012); *see also Chardin v. Police Comm'r of Boston*, 989 N.E.2d 392, 394 n.5 (Mass.), *cert. denied sub nom., Chardin v. Davis*, 134 S.Ct. 525 (2013) ("Although an FID card allows its holder to own or possess a firearm within the holder's residence or place of business, it does not allow the holder to carry the firearm to or in any other place."); Mass. Gen. Laws ch. 140, § 129C.  Plaintiff did not apply for an FID card (Dkt. No. 1 at 5).

do get notified of sealed record disqualifiers.  (Note:  You do not have to tell us what is in the sealed record).

We WILL NOT accept "I forgot", "They told me it would not show up", "It never showed up before", or "That was so long ago".

Make any changes NOW.  Remember, you are signing under penalties of perjury. You will be denied a license for perjury and can face court prosecution.

### *NO EXCEPTIONS!*

(Dkt. No. 8-2 at 2) (emphasis original).

In a January 8, 2016 letter, Chief Campurciani denied Plaintiff's LTC application because Plaintiff was "deemed to be an unsuitable person" based on his "untruthful[]" answer -- "no" -- to question number 4 (Dkt. No. 1 at 5; Dkt. No. 8-4 at 2).  The letter notified Plaintiff of his "right to appeal this denial within 90 days to the District Court with appropriate jurisdiction" (Dkt. No. 8-4 at 2).

When Plaintiff received the notice of denial on January 11, 2016, he "immediately" went to the West Springfield police department, requested a meeting with Chief Campurciani, and gave Officer Eickelberg his contact information in order to set up an appointment with the chief (Dkt. No. 1 at 5).  Plaintiff explained that "there was no criminal intent:  the question was answered incorrectly because of dyslexia" (*id.*).

During a phone conversation with a person at the police department two days later, Plaintiff learned that the chief would not meet with him (*id.*).  Plaintiff was advised to appeal to the court if he was dissatisfied with the chief's decision (*id.*).

After Plaintiff heard that there was an acting chief, he contacted the police department on January 18, 2016 and requested to speak to Acting Chief Sypek (*id.*).  The acting chief's secretary told Plaintiff that Acting Chief Sypek was not authorized to amend the chief's decision on Plaintiff's LTC application and she suggested that Plaintiff "'[t]ake it to [c]ourt'" (*id.*).

Plaintiff received his Criminal Offender Record Information ("CORI") on February 18, 2016 and left a voice mail message requesting an appointment with the acting chief (*id.* at 6).  He did not receive a response to his request (*id.*).

Angus M. Rushlow, a former West Springfield City Councilor, accompanied Plaintiff to the police station on February 21, 2016 (*id.*).  According to the complaint, the desk officer told Plaintiff, "'The acting chief agrees with the chief that you are an '[unsuitable] person" and, if you were told to take it to court, then, that is what you should do'" (*id.*).  The officer indicated that Plaintiff might have to appeal to a court in Boston because the Commissioner of Probation in Boston received a copy of the chief's letter denying Plaintiff's application (Dkt. No. 1 at 6; Dkt. No. 1-1 at 5; Dkt. No. 8-4 at 2).

Plaintiff consulted several attorneys (Dkt. No. 1 at 6).  One told him that he could request review in the court in Springfield (*id.*).

On March 8, the chief's secretary contacted Plaintiff and relayed a message from the acting chief:  he did not have authority to "override" the chief's decision that Plaintiff was an "'unsuitable person'" and he agreed with it (*id.*).  He suggested that Plaintiff "'[t]ake it to court'" (*id.*).

Plaintiff filed the complaint in this court on March 15, 2016 (Dkt. No. 1).  He seeks compensatory and punitive damages, declaratory and injunctive relief "foreclosing . . . Defendants from bringing any further complaints as against . . . Plaintiff's non-criminal activities," costs and fees, and an order for Defendants "to immediately cease and desist from any further actions to take and withhold . . . Plaintiff's rights or lib[e]ling him with being called an 'Unsu[i]table Person' under the guise and color of state law" (Dkt. No. 1 at 19).

III.    MASSACHUSETTS' LTC STATUTORY FRAMEWORK UNDER THE GUN CONTROL ACT OF 1998.

"It is generally a crime under Massachusetts law to carry a firearm without having the appropriate license or FID card, or being exempt from licensing." *Hightower v. City of Boston*, 693 F.3d 61, 65 (1st Cir. 2012). "Massachusetts' two licenses to carry . . . -- Class A and Class B licenses -- 'enable the holder to carry a firearm outside of his residence or place of business.'" *Lovering v. Massachusetts*, Civil Action No. 16-cv-10067, 2016 WL 2977261, at *1 (D. Mass. May 20, 2016) (quoting *Commonwealth v. Gouse*, 965 N.E.2d 774, 785 n.14 (Mass. 2012)). *See* Mass. Gen. Laws ch. 140 § 131(a), (b). A Class A license entitles "a holder thereof to purchase, rent, lease, borrow, possess and carry: (i) firearms,[6] including large capacity firearms, and feeding devices[7] and ammunition therefor . . . ; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor . . . ." Mass. Gen. Laws ch. 140, § 131(a). A Class B license is "less permissive." *Lovering*, 2016 WL 2977261, at *1. It entitles a holder to "purchase, rent, lease, borrow, possess and carry: (i) non-large capacity firearms and feeding devices and ammunition therefor . . . ; and (ii) rifles and shotguns, including

---

[6] A "firearm" under the Massachusetts Gun Control Act of 1998 is defined as "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured . . . ." Mass. Gen. Laws ch. 140, § 121.

[7] A "large capacity weapon" is "any firearm, rifle or shotgun: (i) that is semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a rifle or firearm and more than five shotgun shells in the case of a shotgun or firearm; or (iv) that is an assault weapon." Mass. Gen. Laws ch. 140, § 121. A "large capacity feeding device" includes: "(i) a fixed or detachable magazine, box, drum, feed strip or similar device capable of accepting, or that can be readily converted to accept, more than ten rounds of ammunition or more than five shotgun shells . . . ." *Id.*

large capacity rifles and shotguns," and, unlike the Class A license, does "not entitle the holder . . . to carry or possess a loaded firearm in a concealed manner in any public way or place."  Mass. Gen. Laws ch. 140, § 131(b).

"A person seeking a Class A . . . license must file an application with a 'licensing authority,' defined as 'the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them.'"  *Lovering,* 2016 WL 2977261, at *2 (quoting Mass. Gen. Laws ch. 140, § 121).  "Several categories of applicants are automatically ineligible for a Class A . . . license, including felons, persons under 21 years old, and others."  *Id.* (citing Mass. Gen. Laws ch. 140, § 131(d)(i)-(x)).  "If an applicant does not fall under one of these excluded categories," *id.,* the licensing authority may still deny the application "if, in a reasonable exercise of discretion, the licensing authority determines that the applicant . . . is unsuitable to be issued . . . a license to carry."  Mass. Gen. Laws ch. 140 § 131(d).  "The licensing authority's unsuitability determination must be based on either:  (1) 'reliable and credible information that the applicant . . . has exhibited or engaged in behavior that suggests that, if issued a license, the applicant . . . may create a risk to public safety'; or (2) 'existing factors that suggest that, if issued a license, the applicant . . . may create a risk to public safety.'"  *Lovering*, 2016 WL 2977261, at *2 (quoting Mass. Gen. Laws ch. 140 § 131(d)).

"When a licensing authority denies an application based on an unsuitability finding, it must notify the applicant in writing of the specific reasons for the determination."  *Id.* (citing Mass. Gen. Laws ch. 140, § 131(d)).  "This determination is subject to judicial review in the state district court with jurisdiction over the city or town where the application was filed."  *Id.* (citing Mass. Gen. Laws ch. 140, § 131(f)).  A state district court judge, "after an evidentiary hearing, may direct that a license be issued to the petitioner if the judge finds that there was 'no

8

reasonable ground' for denying such license, and that the petitioner 'is not prohibited by law from possessing [the] same.'" *Chardin v. Police Comm'r of Boston*, 989 N.E.2d 392, 395 (Mass.), *cert. denied sub nom. Chardin v. Davis*, 134 S.Ct. 525 (2013) (quoting Mass. Gen. Laws ch. 140, § 131(f)). "The petitioner is entitled to relief only if the licensing authority's denial was 'arbitrary, capricious, or an abuse of discretion.'" *Id.* at 395-96 (quoting *Godfrey v. Chief of Police of Wellesley*, 616 N.E.2d 485, 488 (Mass. App. Ct. 1993)). *See also Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 175 (D. Mass. 2014). "Further judicial review is available to the petitioner by way of an action in the nature of certiorari" in the superior court. *Chardin,* 989 N.E.2d at 396 (citing Mass. Gen. Laws ch. 249, § 4).

IV.   Discussion:  Defendants' Motions to Dismiss (Dkt. Nos. 7 and 13)

A.   Standard of Review

The Commonwealth and the Municipal Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted (Dkt. Nos 7 and 13).  The Commonwealth also raises the defense of Eleventh Amendment sovereign immunity and requests dismissal under Fed. R. Civ. P. 12(b)(1) based on the court's lack of subject matter jurisdiction (Dkt. No. 13).  Because courts of this circuit are advised to "bypass the constitutional question . . . in favor of the easier question whether plaintiff[] ha[s] stated a claim upon which relief can be granted," the court will first address the 12(b)(6) claims. *Greenless v. Almond*, 277 F.3d 601, 607 (1st Cir. 2002). *See Sepulveda v. UMass. Corr. Health Care*, 160 F. Supp. 3d 371, 383 (D. Mass. 2016).

"Motions to dismiss under Rule 12(b)(6) . . . test the sufficiency of the pleadings." *Hagenah v. Cmty. Enter., Inc.*, Case No. 15-cv-30036-KAR, 2016 WL 1170963, at *3 (D. Mass. Mar. 23, 2016).  "To survive a motion to dismiss, a complaint must contain sufficient factual

9

matter, accepted as true, to "state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility does not demand a showing that the claim is likely to succeed.  It does, however, demand a showing of 'more than a sheer possibility' of success." *Butler v. Balolia*, 736 F.3d 609, 616 (1st Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).  In order to meet the plausibility standard, "[t]he plaintiff must proffer more than mere 'labels and conclusions' or 'naked assertions devoid of further factual enhancement.'" *Garrity, Levin & Muir, L.L.P. v. United States*, No. CV 15-11405-RGS, 2015 WL 6126816, at *2 (D. Mass. Oct. 16, 2015) (quoting *Iqbal*, 556 U.S. at 678).

> The First Circuit has instructed that "[t]he plausibility inquiry necessitates a two-step pavane."  The court must first differentiate between "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Next, "the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Doe v. Brown Univ.*, C.A. No. 15-144 S, 2016 WL 715794, at *4 (D.R.I. Feb. 22, 2016) (quoting *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013)).  "In conducting this analysis, the [c]ourt must . . . analyze those [accepted] facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff." *Sepulveda*, 160 F. Supp. 3d at 383 (citing *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011)).  Here, the court construes Plaintiff's pro se complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and will dismiss "only if . . . [Plaintiff] cannot prove any set of facts entitling him . . . to relief." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).  *See Sepulveda*, 160 F. Supp. 3d at 383 (citing *Muller v. Bedford V.A. Admin. Hosp.*, Civil Action No. 11–10510-DJC, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013)).  "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed,* 118 F.3d at 890.

B.      Counts 1 through 5:  Claims for Violations of Plaintiff's Constitutional Rights and Conspiracy.

Citing 42 U.S.C. §§ 1983 and 1985(3), Counts 1 through 5 of the complaint allege that Defendants' wrongful denial of Plaintiff's LTC application deprived him of his "rights to liberty and due process" (Dkt. No. 1 at 10-12).  The court interprets Plaintiff's allegations as seeking recovery from Defendants for:  (1) violating his constitutional rights under the Second Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment; and (2) conspiring to violate these substantive rights (Dkt. No. 1 at 9, 10-12).  All Defendants argue that dismissal is required because the complaint fails to state a claim for relief.  In addition, the Municipal Defendants contend that they are entitled to qualified immunity.  Each of these grounds will be discussed in turn.

1.      Claim under 42 U.S.C. § 1983.

Pursuant to 42 U.S.C. § 1983, Plaintiff avers that the Commonwealth and the Municipal Defendants infringed upon his right to bear arms and his rights to equal protection under the law and to due process (Dkt. No. 1 at 10-12).  Defendants respond that Plaintiff fails to demonstrate that their conduct fell outside constitutional bounds (Dkt. No. 8 at 5-10; Dkt. No. 14 at 13-15).

Section 1983 of 42 U.S.C. "authorizes suits against state officials for violations of constitutional rights." *Lovering*, 2016 WL 2977261, at *2 n.2.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  "In order to prove a claim under § 1983, plaintiff must show that (1) the conduct complained of was carried out under color of state law and (2) that conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pineiro v. Gemme*, 937 F. Supp. 2d 161, 169 (D. Mass. 2013) (citing *Collins v. Nuzzo, 244 F.3d 246*, 250 (1st Cir. 2001)).  The parties do not dispute that the three police officers acted under color of state law.  The only question is whether Defendants' conduct denied Plaintiff's

right to bear arms under the Second Amendment or his rights to equal protection or due process under the Fourteenth Amendment.  For the following reasons, the facts alleged in the complaint fail to demonstrate that Defendants infringed upon Plaintiff's constitutional rights.

a.      Second Amendment claim.

Focusing first on Plaintiff's Second Amendment claim, he challenges the constitutionality of Mass. Gen. Laws ch. § 131(d)'s "'suitable person'" standard as it applied to deprive him of a Class A LTC based on his false answer to question 4 on the application.  *Chief of Police of Worcester v. Holden*, 26 N.E.3d 715, 719 (Mass. 2015).  Question 4 asked whether the applicant had "ever been arrested or appeared in court as a defendant for any criminal offense" (Dkt. No. 1-1 at 2).  The West Springfield Police provided a separate Warning Form that informed applicants of the consequences of providing a false answer to question 4:  "[h]aving been arrested or convicted of a crime does not necessarily prohibit you from getting an LTC . . . . NOT PUTTING IT DOWN DOES" (Dkt. No. 8-2 at 2) (emphasis original).  The Warning Form explained that the term "ever appeared in court" in question 4 meant "all adult and juvenile [criminal] appearances," including:  cases in which the applicant was found not guilty; cases in which the charges were dismissed or continued without a finding; and cases in which the record was sealed (*id.*).  The Warning Form repeated the application's admonition that failure to answer question 4 truthfully would result in the denial of a license due to "perjury" and might result in prosecution (*id.*).  Plaintiff signed and dated the Warning Form when he submitted his typed LTC application (Dkt. No. 8-2 at 2; Dkt. No. 8-3 at 4).  Plaintiff gave an incorrect answer to question 4 despite receiving the explicit warning (Dkt. No. 1 at 5).[8]  As a result, Chief

---

[8] When Plaintiff received the chief's letter, he went to the police department and told Officer Eickelberg that he answered question 4 incorrectly due to dyslexia (Dkt. No. 1 at 5).

Campurciani exercised the discretion conferred by § 131(d), deemed Plaintiff to be "unsuitable" to be issued a Class A license, and denied Plaintiff's application (Dkt. No. 8-4 at 2).  *See Holden*, 26 N.E.3d at 724; Mass. Gen. Laws ch. 140, § 131(d).  Plaintiff alleges that, by denying his LTC application on the ground that he was "unsuitable," Defendants deprived him of his "constitutionally protected right[] . . . to keep and bear arms . . . [as] secured by the Second [Amendment]" (Dkt. No. 1 at 11-12).  Plaintiff fails to sustain his burden of demonstrating a violation of his Second Amendment rights, however, since after the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago,* 561 U.S. 742 (2010), the First Circuit upheld § 131's "suitable person" standard in a case which is factually similar to the case at bar.  *See Hightower*, 693 F.3d at 71-76 (citing Mass. Gen. Laws ch. 140, § 131(f)); *see also Lovering*, 2016 WL 2977261, at *3-4.

"In the landmark decision of . . . *Heller*, the Supreme Court held that the Second Amendment provides an individual right to bear arms."[9] *Morin v. Leahy*, CIVIL ACTION NO. 4:15-CV-40048-TSH, 2016 WL 2901732, at *3 (D. Mass. May 18, 2016), *appeal docketed*, No. 16-1904 (1st Cir. Sept. 15, 2016) (citing *Heller*, 554 U.S. at 576-626).  "The Court explained that the Second Amendment 'elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'"  *Id.* (quoting *Heller*, 554 U.S. at 635).  *See Hightower,* 693 F.3d at 72 ("Courts have consistently recognized that *Heller* established that the possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment.").

Importantly, the Court also held that "the right secured by the Second Amendment is not unlimited" and cautioned that nothing in its opinion "should be taken to cast doubt on

---

[9] The Second Amendment to the U. S. Constitution provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  The Court further clarified that it presented "these presumptively lawful regulatory measures only as examples" rather than as an exhaustive list.

*Morin,* 2016 WL 2901732, at *3 (quoting *Heller,* 554 U.S. at 626-27 & n.26).

"Two years after *Heller,* the Supreme Court held that the Second Amendment applies to state and local regulation of firearms."  *Id.* (citing *McDonald,* 561 U.S. at 750).  "Together, *Heller* and *McDonald* establish that states may not impose legislation that works a complete ban on the possession of operable handguns in the home by law-abiding, responsible citizens for use in immediate self-defense."  *Powell v. Tompkins,* 783 F.3d 332, 347 (1st Cir. 2015), *cert. denied,* 136 S.Ct. 1448 (2016).  "However, the Supreme Court 'did not say, and to date has not said, that *publicly* carrying a firearm unconnected to defense of hearth and home and unconnected to militia service is a definitive right of private citizens protected under the Second Amendment.'"  *Morin,* 2016 WL 2901732, at *3 (quoting *Powell,* 783 F.3d at 348).

Plaintiff's right to possess a weapon in the home for self-defense is not at issue here. Plaintiff applied for -- and was denied -- a Class A license, which permits the licensee to possess a concealed firearm outside his home (Dkt. No. 1 at 5; Dkt. No. 1-1 at 3; Dkt. No. 8-1 at 4).[10] *See Powell,* 783 F.3d at 338 ("The holder of a Class A license has greater privileges and generally may publicly carry larger capacity firearms for lawful purposes that are loaded and concealed.") (citing Mass. Gen. Laws ch. 140, § 131(a)); *Morin,* 2016 WL 2901732, at *4 ("[A] Class A license . . . is the most comprehensive license available in Massachusetts and allows its holder to carry loaded, high-capacity, concealed firearms in public.").  "[L]aws prohibiting the

---

[10] Plaintiff sought a firearms' license to work as a master gunsmith and for "personal protection and to follow the laws of the Commonwealth of Massachusetts" (Dkt. No. 8-1 at 4).

carrying of concealed weapons [are an] "example[] of [a] 'longstanding' restriction[] that [is]

'presumptively lawful' under the Second Amendment." *United States v. Rene E.*, 583 F.3d 8, 12

(1st Cir. 2009) (quoting *Heller*, 554 U.S. at 626).  The portion of § 131(d) at issue in this case is

not a blanket prohibition on the possession of concealed firearms.  Instead, it restricts the

issuance of Class A licenses to those individuals whom the licensing authority determines to be

"'suitable person[s];'" that is, those who do not pose a risk to public safety.  *Holden*, 26 N.E.3d at

719; Mass. Gen. Laws ch. 140, §131(d). [11]  In circumstances similar to those here, the First

Circuit in *Hightower* upheld the suitability restriction that Plaintiff attacks.  *See Hightower*, 693

F.3d at 71-76.  Accordingly, the court's decision in *Hightower* controls. [12]

In *Hightower*, as here, the licensing official determined that the plaintiff was

"'unsuitable'" to possess a Class A LTC based on her untruthful answer to a question on the

license application form.[13]  *Hightower,* 693 F.3d at 68, 74.  In rejecting the *Hightower* plaintiff's

---

[11]  In pertinent part, § 131(d) says:

> The licensing authority may deny the application or renewal of a license to carry, or
> suspend or revoke a license issued under this section if, in a reasonable exercise of
> discretion, the licensing authority determines that the applicant or licensee is unsuitable
> to be issued or to continue to hold a license to carry.  A determination of unsuitability
> shall be based on: (i) reliable and credible information that the applicant or licensee has
> exhibited or engaged in behavior that suggests that, if issued a license, the applicant or
> licensee may create a risk to public safety; or (ii) existing factors that suggest that, if
> issued a license, the applicant or licensee may create a risk to public safety.

Mass. Gen. Laws Ann. ch. 140, § 131.

[12] *Hightower* controls despite that fact that the court in *Hightower* "reviewed an earlier version of
the statute than that at issue in this case," that "conferred even more discretion to the licensing
authority . . . ."  *Lovering*, 2016 WL 2977261, at 3 & n.4.

[13] "Although Hightower involved a revocation [of a Class A LTC], not a denial, the same
suitability review process applies to revocations as denials."  *Lovering*, 2016 WL 2977261, at *3
n.3 (citing Mass. Gen. Laws ch. 140, § 131(d)).

Second Amendment challenge to the "suitable person" restriction, "[t]he court distinguished the interest that [plaintiff] was advancing -- obtaining a license that allowed her to carry concealed weapons outside the home -- from the 'core interest emphasized in *Heller*,' which is 'the possession of operative firearms for use in defense of the home,'" *Morin*, 2016 WL 2901732, at *5 (quoting *Hightower*, 693 F.3d at 72), and affirmed the government's ability to regulate the carrying of concealed firearms in public.  *See Hightower*, 693 F.3d at 73-74; *Rene E.*, 583 F.3d at 12; Mass. Gen. Laws ch. 140, § 131(d), (f).  The court concluded that "the revocation of a firearms license on the basis of [plaintiff] providing false information . . . is not a violation of the Second Amendment in this case."  *Hightower*, 693 F.3d at 74.

In reaching its decision, the *Hightower* court, noting the unsettled state of the law, declined to adopt a specific level of means-ends scrutiny for evaluating "laws that restrict a person's ability to carry concealed weapons in public."  *Morin*, 2016 WL 2901732, at *6.  *See Davis v. Grimes*, 9 F. Supp. 3d 12, 27 (D. Mass. 2014).  "[T]he Supreme Court has yet to set forth the framework for analyzing constitutional challenges pursuant to the Second Amendment."  *Davis*, 9 F. Supp. 3d at 27 (citing *United States v. Booker*, 644 F.3d 12, 22 (1st Cir. 2011)).  *See Powell*, 783 F.3d at 347 (*Heller* and *McDonald* "left open for future cases the sort of judicial review to be applied to other firearms regulation.").  Although the First Circuit has not adopted a particular analytical framework for all Second Amendment cases either, the *Hightower* court determined that § 131's suitability requirement passed muster irrespective of the level of scrutiny applied to plaintiff's license revocation claim based on its determination that the "requirement that firearms license applicants provide truthful information, enforced by the [denial or] revocation of licenses if the applicant provides false information, serves a variety of important purposes."  *Hightower*, 693 F.3d at 74.  In the four years since the *Hightower* decision,

courts of this circuit have not altered this analysis of § 131's "'suitable person'" provision. *Holden*, 26 N.E.3d at 719.  *See Davis*, 9 F. Supp. 3d at 25; *Lovering*, 2016 WL 2977261, at *3.

"The purpose of [Mass. Gen. Laws ch.] 140, § 131, is to 'limit access to deadly weapons by irresponsible persons.'"  *Holden*, 26 N.E.3d at 853 (quoting *Ruggiero v. Police Comm'r of Boston*, 464 N.E.2d 104, 106 (Mass. App. Ct. 1984)).  In order to achieve this goal, the statute prohibits certain enumerated classes of persons from possessing firearms.  *See* Mass. Gen. Laws ch. 140, § 131(d)(i)-(vii).  *See also Ruggiero,* 464 N.E.2d at 107 ("Consistent with the[] aims [of the statute], § 131 describes those persons who, because of immaturity, antisocial behavior, or status as an alien, are deemed improper persons to obtain licenses.").  If an individual is not prohibited from possessing a gun due to inclusion in an enumerated category, the "'suitable person'" provision "allows licensing authorities to keep firearms out of the hands of persons . . . who nevertheless pose a palpable risk that they would not use a firearm responsibly if allowed to carry in public."  *Holden*, 26 N.E.3d at 719, 724.  The licensing authority obtains information to determine an applicant's eligibility for an LTC through his or her answers to the questions on the application, and the investigation that the licensing authority and the colonel of the state police are required to conduct.  *See* Mass. Gen. Laws ch. 140, § 131(e).  The suitability provision promotes the government's significant interest in obtaining complete and accurate information from the applicant by permitting the licensing authority to deny an application as a penalty for the submission of incorrect information.  *See Hightower*, 693 F.3d at 75; Mass. Gen. Laws ch. 140, § 131(d).  The Massachusetts statute's criminal penalties for providing false information on a firearms application provide an additional means to enforce the veracity requirement.  *Id.* (citing Mass. Gen. Laws ch. 140, §§ 129, 131(h)).  The ability to deny an LTC for providing inaccurate or misleading information on the application, therefore, is directly related to the

government's "significant interests in promoting public safety and preventing violence," *Holden*, 26 N.E.3d at 728, and withstands "any standard of heightened scrutiny." *Davis*, 9 F. Supp. 3d at 25. The investigation into Plaintiff's background revealed objective evidence that he gave an inaccurate answer to the question about his criminal history, a conclusion that Plaintiff does not deny (Dkt. No. 1 at 5; Dkt. No. 8-4 at 2). "[T]his particular ground for 'unsuitability' is not subjective, and it does not confer too much discretion on the licensing authority." *Hightower*, 693 F.3d at 76.

The "'suitable person'" provision of § 131(d) does not violate Plaintiff's Second Amendment rights. *See Hightower*, 693 F.3d at 76; *Holden*, 26 N.E.3d at 719. Accordingly, the Commonwealth and the Municipal Defendants are not liable under § 1983. [14]

   b.   Fourteenth Amendment Equal Protection Claim.

In addition to asserting the Second Amendment violation, Plaintiff alleges that Defendants' denial of the LTC deprived him of the equal protection of the laws. Defendants seek dismissal on the ground that Plaintiff's complaint is deficient (Dkt. No. 8 at 8-9 n.6; Dkt. No. 14 at 12). Their argument is persuasive.

"The Equal Protection Clause of the Fourteenth Amendment provides that similarly situated persons are entitled to receive similar treatment at the hands of government actors." *Pineiro*, 937 F. Supp. 2d at 175.

---

[14] It does not appear that Plaintiff has raised a facial challenge to the "'suitable person'" provision of § 131(d). *Holden*, 26 N.E.3d at 719. If his complaint is read to include this assertion, however, it is unavailing for the reasons that the court discussed in *Hightower*. *See Hightower*, 693 F.3d at 76-82. In addition, the Supreme Judicial Court considered an applicant's facial challenge to the suitability provision of § 131(d) in light of *Heller* and *McDonald* and rejected it. *See Holden*, 26 N.E.3d at 728-29; *see also Lovering*, 2016 WL 2977261, at *4 (noting it was "unlikely" that plaintiff's facial challenge would succeed "[g]iven that both the First Circuit and the SJC have already reviewed the concept of 'suitability,' and found it acceptable . . . .").

> To plead a § 1983 claim based on an equal protection violation, [plaintiff] "must allege facts plausibly demonstrating that compared with others similarly situated," [he] was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Lu v. Smith*, Civil Action No. 15-14081-DJC, 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016)

(quoting *Harrington v. City of Attleboro*, Case No: 15-cv-12769-DJC, 2016 WL 1065804, at *6

(D. Mass. Mar. 16, 2016)).  "This showing of disparate treatment is a 'threshold requirement' of

any equal protection claim." *Id*. (quoting *Ayala-Sepulveda v. Municipality of San German*, 671

F.3d 24, 32 (1st Cir. 2012)).  Here, Plaintiff fails to allege, or even suggest, that he was treated

differently from other similarly situated individuals:  those who gave incorrect answers to a

question on the LTC application (Dkt. No. 1).  *See Rogers v. Flynn*, No. Civ.A. 02-10789-RWZ,

2003 WL 1790851, at *2 (D. Mass. Mar. 31, 2003) ("Because all applicants aggrieved by a

denial of a license to carry firearms are subject to the terms of Section 131, plaintiff has not

shown that he was selectively treated.").  "Moreover, even if [Plaintiff] was asserting an equal

protection clause violation under a 'class of one' theory, his claim is not sufficiently stated for the

same reason." *Lu*, 2016 WL 4595206, at *3.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562,

564 (2000).  *Compare Buchanan v. Maine*, 469 F.3d 158, 177-78 (1st Cir. 2006) (granting

summary judgment to defendant on "class of one" equal protection claim because the plaintiff

"failed to show any 'specific instances' involving *similarly situated* individuals" that were treated

differently).

If Plaintiff's equal protection claim was adequately pleaded, "[g]iven that the Second

Amendment challenge fails, the equal protection claim is subject to rational basis review."

*Hightower*, 693 F.3d at 83.  For the reasons discussed above "as to why [Plaintiff's] as-applied

claim fails, the license [denial] survives rational basis review under the Equal Protection Clause." *Id*. A claim for relief does not lie under this theory.

        c.        Fourteenth Amendment Due Process Claims.

Finally, Plaintiff avers that by depriving him of "liberty and due process" Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment, which forbids the state from depriving "any person of life, liberty, or property, without due process of law" (Dkt. No. 1 at 10-12). U.S. Const. amend. XIV, § 1. Due Process claims can be presented under a procedural due process or a substantive due process theory. *See Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991), *abrogated on other grounds by Martínez v. Cui*, 608 F.3d 54, 63-64 (1st Cir. 2010). "The essence of a procedural due process claim is that a state actor deprived the plaintiff of life, liberty, or property without adequate procedural protections." *Temple v. Inhabitants of Belfast*, 30 F. Supp. 2d 60, 65 (D. Me. 1998). "Substantive due process, in contrast, imposes limits on what a state actor may do regardless of the procedural protections afforded to the plaintiff." *Id.* Because Plaintiff does not indicate whether he is alleging violations of procedural or substantive due process, the court addresses both. However, Counts 1 through 5 of the complaint fail to state a viable cause of action on both grounds.

        (1)        Procedural Due Process.

The court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011) (citing *González–Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010)). "'No rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather, "due process is flexible and calls for

such procedural protections as the particular situation demands.""" *Hightower v. City of Boston*, 822 F. Supp. 2d 38, 56 (D. Mass. 2011), *aff'd*, 693 F.3d 61 (1st Cir. 2012) (quoting *González-Droz v. González-Colon,* 660 F.3d 1, 13 (1st Cir. 2011)).

Plaintiff's procedural due process claim fails because "neither a 'property' nor a 'liberty' interest is implicated by the . . . initial denial of an [LTC]."[15] *Costerus v. Neal*, No. Civ.A 00-12156-MEL, 2001 WL 267456, at \*4 (D. Mass. Mar. 9, 2001).  Pre-*Heller* and *McDonald*, a Massachusetts LTC applicant did not have a liberty or property interest in a firearms license.  *See id.* (quoting *Chief of Police of Shelburne v. Moyer,* 453 N.E.2d 461, 464 (Mass. App. Ct. 1983) (plaintiff did not have a liberty or property interest in a gun license)).  Although this court could not find a post-*Heller* and *McDonald* case in this circuit that addresses whether an applicant for a Class A LTC has a cognizable property or liberty interest protected by the Fourteenth Amendment, an examination of § 131(d) under the applicable standard shows that Plaintiff does not have a covered interest due to the substantial discretion that the statute vests in the licensing authority.[16]  *See Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005) ("[A] benefit is not

---

[15] Plaintiff also references injury to his reputation (Dkt. No. 1 at 10).  However, "[a] due process claim cannot rest upon reputational harm alone." *Mead v. Indep. Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012).  *See Paul v. Davis,* 424 U.S. 693, 701–02 (1976) (holding that mere defamation by a state actor does not violate constitutional rights).  "Thus, when a person alleges that []he has suffered stigmatization at the hands of a government actor, []he must show an adverse effect on some interest 'more tangible' than reputational harm." *U.R.I. Student Senate v. Town of Narragansett,* 631 F.3d 1, 9 (1st Cir.2011) (quoting *Paul*, 424 U.S. at 701).  "That is, 'the reputational injury must be accompanied by a change in the injured person's status or rights under substantive state or federal law.'" *Mead*, 684 F.3d at 233 (quoting *Silva v. Worden,* 130 F.3d 26, 32 (1st Cir. 1997)).  "To use the popular catch phrase, the complaining party must satisfy a 'stigma plus' standard." *U.R.I. Student Senate,* 631 F.3d at 9.  Plaintiff does not meet this requirement.

[16] *See Hightower*, 693 F.3d at 84 (court assumed plaintiff had a property interest in her revoked LTC); *Plouffe v. Town of Dighton*, 984 F. Supp. 2d 1, 5 (D. Mass. 2013) (plaintiff had a property interest in a suspended FID card); *Richer v. Parmelee*, C.A. No. 15-162-M-PAS, 2016 WL

a protected entitlement if government officials may grant or deny it in their discretion."); *Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981) ("[T]he more circumscribed . . . the government's discretion (under substantive state or federal law) to withhold a benefit, the more likely that benefit constitutes 'property'. . . ."). *Compare Young v. Hawaii*, 911 F. Supp. 2d 972, 993 (D. Haw. 2012) (holding that Hawaii's gun licensing statute did "not implicate [p]laintiff's liberty or property interests because there is no [fundamental] right to carry weapons in public" and, accordingly, plaintiff was not entitled to due process).

> Mere expectations, abstract needs, and desires are not sufficient to create a property [or liberty] interest subject to procedural due process safeguards. Rather, to have a constitutionally protected interest, a plaintiff must have a "legitimate claim of entitlement" to it. This determination largely depends on the amount of discretion state law provides the decisionmaker to grant or deny the benefit. Less discretion creates a greater likelihood that the statute confers a constitutionally protected interest.

*Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 165 (D. Mass. 2011) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)). *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."); *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it.").

The Supreme Judicial Court has described the "'suitable person' standard" as one that "confers upon a licensing authority '"considerable latitude" or broad discretion in making a licensing decision.'" *Holden*, 26 N.E.3d at 724 (quoting *Chardin*, 989 N.E.2d at 395). The licensing authority "may" issue a Class A license to an applicant who is not a "prohibited

---

3094487, at *2-3 (D.R.I. June 1, 2016) (plaintiff had property interest in his confiscated firearms).

person," as defined in § 131(d)(i)-(x).  Mass. Gen. Laws ch. 140, § 131(d).  But even if the applicant is not a "prohibited person," the licensing authority "may deny the application or renewal of a[n] [LTC], or suspend or revoke a license . . . if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee is unsuitable to be issued or to continue to hold a[n] [LTC]."  *Id.*  The determination of suitability is based on whether the applicant or licensee "may create a risk to public safety."  *Id.*  In view of the licensing authority's broad discretion, Plaintiff does not have a liberty or property right in an LTC.  *See Beitzell,* 643 F.2d at 874; *Connor B.*, 771 F. Supp. 2d at 165.

Given the absence of Plaintiff's liberty or property interest, the procedures outlined in § 131(f) provided "prompt, comprehensive . . . review" of the licensing authority's decision to deny his application, *Holden*, 26 N.E.3d at 730, thereby satisfying the fundamental due process requirement of affording an "'opportunity to be heard' . . . 'at a meaningful time and in a meaningful manner.'"[17]  *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (first quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914); then quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Section 131(d) requires the licensing authority, within forty days from the date of application, to notify the applicant in writing of the "specific reasons" for the decision denying the application on the basis of "unsuitability."  Mass. Gen. Laws ch. 140, § 131(d), (e).  *See Raper v. Lucey*, 488 F.2d 748, 753 (1st Cir. 1973).  Within ninety days of the licensing

---

[17] Plaintiff does not appear to assert that he was entitled to a hearing prior to the denial of his application.  If he is making such a claim, it is futile.  There is no legal basis to grant him a hearing when he submitted his application for the Class A license because he had no liberty or property interest at that time.  *See O'Neill v. Town of Nantucket*, 545 F. Supp. 449, 452 (D. Mass. 1982) ("The procedural protections of the due process clause are only applicable when there is an infringement of a protectable interest.").  The First Circuit has upheld the denial of a predeprivation hearing prior to the revocation of a previously issued license in which there is a constitutionally protected interest.  *See Hightower*, 693 F.3d at 84-85.

authority's denial of the LTC application, the applicant is entitled to seek review of the decision by way of an evidentiary hearing in the district court having jurisdiction over the town where the applicant resides.[18]  *See Holden*, 26 N.E.3d at 729-30 (citing *Godfrey*, 616 N.E.2d at 487); Mass. Gen. Laws ch. 140, § 131(f).  A justice of the district court can order the issuance of a license if he finds "that there was no reasonable ground for denying, suspending, revoking or restricting the license and that the petitioner is not prohibited by law from possessing a license."  Mass. Gen. Laws ch. 140, § 131(f).  If the district court affirms the licensing authority's decision, the applicant can obtain superior court review through a certiorari petition.  Mass. Gen. Laws ch. 249, § 4.  This process adequately protects Plaintiff's rights.

(2)     Substantive Due Process

Plaintiff's claim for a violation of substantive due process, if any, is also unavailing.

> There are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment.  Under the second, a plaintiff is not required to prove the deprivation . . . , but, rather, he must prove that the state's conduct "shocks the conscience."

*Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617, 622 (1st Cir. 2000) (citation omitted).  Plaintiff's allegations falter on both grounds.  As discussed above, an applicant for a Class A license does not have a cognizable liberty or property interest in a firearms' license prior to its issuance.  In addition, the First Circuit has held, "with a regularity bordering on the monotonous," *Pagán v. Calderón,* 448 F.3d 16, 33 (1st Cir. 2006), as follows:

> [S]ubstantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decision

---

[18] Despite receiving written notice of his right to district court review of the denial of the LTC application and despite being advised on multiple occasions to seek review in the court, Plaintiff did not pursue this remedy (Dkt. No. 1 at 5-6; Dkt. No. 8-4 at 2).  His failure to seek relief in state court, however, does not preclude him from bringing an action under 42 U.S.C. § 1983. *See Plouffe*, 984 F. Supp. 2d at 4 n.5.

makers, whether those decisions are right or wrong. While . . . the door [has been left] slightly ajar for . . . truly horrendous situations, any permit or license denial, no matter how unattractive, that falls short of being truly horrendous is unlikely to qualify as conscience-shocking.

*Id.* (internal citations omitted).

"The challenged conduct in this case involves a discretionary licensing determination and hence is not subject to due process challenge absent allegations of 'truly horrendous' behavior." *Quarterman v. City of Springfield*, 716 F. Supp. 2d 67, 74 (D. Mass. 2009) (quoting *Pagán*, 448 F.3d at 33). Chief Campurciani's denial of Plaintiff's application for a Class A license to carry a concealed gun in public based on Plaintiff's false answer to the question about his criminal court appearances is not a "sufficiently egregious" act. *Id.  See Hightower*, 822 F. Supp. 2d at 60 (rejecting plaintiff's substantive due process allegation that the "arbitrary" revocation of her Class A license was a """truly horrendous situation""") (quoting *Collins*, 244 F.3d at 250); *Rosenfeld v. Egy*, 346 F.3d 11, 15 (1st Cir. 2003) (Pre-*Heller* and *McDonald* denial of plaintiff's application to renew his LTC did not "shock the conscience").

To summarize, because Plaintiff has not demonstrated a "deprivation of any rights, privileges, or immunities secured by the Constitution," the court recommends that his claims under 42 U.S.C. § 1983 against all Defendants be dismissed. 42 U.S.C. § 1983.

2.       Conspiracy Claim under 42 U.S.C. §1985(3).

Plaintiff also declares that the Commonwealth and the Municipal Defendants conspired to deny his LTC application and, concomitantly, his constitutional rights. Defendants respond by calling attention to the absence of facts to support the existence of a conspiracy (Dkt. No. 8 at 8 n.5; Dkt. No. 14 at 8, 11-12). Defendants' argument is correct as a matter of law.

As noted earlier, the conspiracy claim is brought under 42 U.S.C. § 1985(3) (Dkt. No. 1 at 9). "Section 1985(3) . . . *creates* no rights. It is a purely remedial statute, providing a civil

cause of action when some otherwise defined right -- to equal protection of laws or equal

privileges and immunities under the laws -- is breached by a conspiracy in the manner defined by

the section." *Great Am. Fed. Sav. & Loan Assoc. v. Novotny*, 442 U.S. 366, 376 (1979). *See*

*Moreno-Pérez v. Toledo-Dávila*, 764 F. Supp. 2d 351, 358 (D.P.R. 2011) ("Section 1985(3)

prohibits persons from conspiring to deprive any person . . . of their constitutional rights.").

"The Court of Appeals for the First Circuit has pellucidly established the threshold to be

reached by a plaintiff asserting a claim pursuant to § 1985(3)." *Rolón v. Rafael Rosario &*

*Assocs, Inc.*, 450 F. Supp. 2d 153, 159 (D.P.R. 2006). *See also Pérez-Sánchez v. Pub. Bldg.*

*Auth.*, 531 F.3d 104, 107 (1st Cir. 2008).

> To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy,
> (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly,
> of the equal protection of the laws or of equal privileges and immunities under the laws,
> (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or
> property, or (b) a deprivation of a constitutionally protected right or privilege. *See Griffin
> v. Breckenridge,* 403 U.S. 88, 102 (1971). In *Griffin,* the Supreme Court placed a gloss
> on these four elements, effectively adding a fifth requirement. It construed the statute's
> references to "equal protection" and "equal privileges and immunities under the laws" [in
> the second element] to signify that a plaintiff may recover thereunder only when the
> conspiratorial conduct of which he complains is propelled by "some racial, or perhaps
> otherwise class-based, invidiously discriminatory animus." *Id.*

*Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996). Plaintiff's complaint fails to meet the first

prong's conspiracy requirement.

"Generally, a conspiracy requires a meeting of the minds to achieve an unlawful end."

*Rolón*, 450 F. Supp. 2d at 159. "In alleging a § 1985(3) conspiracy, a plaintiff is 'require[d] [to

provide] at least minimum factual support of the existence of a conspiracy.'" *Moreno-Pérez*, 764

F. Supp. 2d at 358 (quoting *Francis-Sobel v. Univ. of Me.,* 597 F.2d 15, 17 (1st Cir. 1979)). Bald

claims of conspiracy among defendants are insufficient. *See Slotnick v. Garfinkle,* 632 F.2d 163,

166 (1st Cir. 1980). *See Aulson*, 83 F.3d at 3 (holding that the court is not obligated to accept

"bald assertions, unsupportable conclusions and periphrastic circumlocutions and the like").

Instead, "plaintiff[] must expressly allege an agreement or make averments of communication,

consultation, cooperation, or command from which such an agreement can be inferred." *Rolón*,

450 F. Supp. 2d at 160.  "[M]ere allegations of misconduct by one person alone is insufficient to

support a § 1985 claim . . . ." *Id.*  The failure to adequately support a conspiracy allegation

warrants dismissal of a complaint. *See id.* (quoting *Ochoa Realty Corp. v. Faria,* 634 F. Supp.

723, 726 (D.P.R. 1986), *aff'd*, 815 F.2d 812 (1st Cir. 1987)).

Even construing the facts set forth in the pro se complaint liberally and under the

favorable motion to dismiss standard, the complaint falls short of alleging sufficient facts to

establish a conspiracy.  Chief Campurciani was the licensing authority under Mass. Gen. Laws

ch. 140, § 121.  The complaint alleges that Plaintiff submitted his LTC application to Officer

Eickelberg, Chief Campurciani denied it based upon Plaintiff's unsuitability to possess an LTC,

and Acting Chief Sypek agreed with the chief's decision and refused to reverse it (Dkt. No. 1 at

5-6; Dkt. No. 8-4 at 2).  The complaint is devoid of the requisite particular facts from which it

could reasonably be inferred that any of these three officers, or any others, agreed to deprive

Plaintiff of his constitutional rights or that the officers communicated or cooperated in

furtherance of this goal. *See Rolón*, 450 F. Supp. 2d at 165 ("[P]laintiff's complaint lacks

averments relating to any type of communications, cooperation, or agreement amongst the co-

defendants to conspire against the plaintiff and/or to deprive plaintiff [of] her civil rights.").

If Plaintiff meets the first prong, he does not satisfy any of the other § 1985(3) tests

outlined in *Aulson*.  The complaint fails to meet the second and fifth prongs' requirements of

showing "some racial, or perhaps otherwise class-based, invidiously discriminatory animus

behind the conspirators' action" undertaken to deprive him of equal protection or equal privileges

and immunities under the laws. *Pérez-Sánchez*, 531 F.3d at 107 (quoting *Griffin*, 403 U.S. at

102).  With respect to this element, "[t]he First Circuit requires [a] plaintiff[] to prove that (1) the

defendants conspired against [him] because of [his] membership in a class, and (2) the criteria

defining the class are invidious." *Sepulveda*, 160 F. Supp. 3d at 388 (citing *Aulson*, 83 F.3d at

4).  Facts to support these elements are wholly absent from Plaintiff's complaint.  In addition, the

complaint does not allege any "overt act in furtherance of the conspiracy" (third prong), and for

the reasons stated in the earlier discussion of the § 1983 claim, Defendants did not deprive

Plaintiff of any constitutional rights (fourth prong).  *Aulson,* 83 F.3d at 3.

Because the absence of sufficient facts dooms Plaintiff's complaint of a violation of §

1985(3), the court recommends that so much of Counts 1 through 5 as allege a conspiracy under

that section be dismissed.

### 3.    Qualified Immunity.

All Municipal Defendants contend that they are entitled to qualified immunity as to

Plaintiff's Second Amendment claim.  "Qualified immunity provides not only immunity from

liability but also immunity from suit." *Tirado v. Cruz*, Civil No. 10-2248(CVR), 2012 WL

525450, at *4 (D.P.R. Feb. 16, 2012).  However, "[u]nlike individual defendants, municipalities

are not entitled to qualified immunity." *Walden v. City of Providence,* 596 F.3d 38, 55 n.23 (1st

Cir. 2010).  Accordingly, the discussion of qualified immunity does not apply to the City.

"The doctrine of qualified immunity protects government officials "from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."'" *Messerschmidt v.

Millender,* 132 S.Ct. 1235, 1244 (2012) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231

(2009)).  *See Veilleux v. Perschau,* 101 F.3d 1, 2 (1st Cir. 1996) (per curiam) ("Qualified

immunity protects public officials from section 1983 civil liability so long as they 'acted

reasonably under settled law in the circumstances.'") (quoting *Hunter v. Bryant,* 502 U.S. 224,

228 (1991) (per curiam)).

"The qualified immunity analysis requires a court to decide (1) whether the facts alleged

or shown by plaintiff make out a violation of a constitutional right and (2) if so, whether the right

was clearly established at the time of defendant's alleged violation." *Tirado*, 2012 WL 525450,

at *4. "Courts are allowed to conduct the inquiry sequentially or resolve a particular case on the

second prong alone." *Id.* (citing *Barton v. Clancy,* 632 F.3d 9, 22 (1st Cir. 2011)).  *See Pearson*,

555 U.S. at 236.

> For purposes of the second step of that analysis, whether the right in question was
> "clearly established" depends on "(a) whether the legal contours of the right in question
> were sufficiently clear that a reasonable officer would have understood that what he was
> doing violated the right, and (b) whether in the particular factual context of the case, a
> reasonable officer would have understood that his conduct violated the right."

*Pineiro*, 937 F. Supp. 2d at 171 (quoting *Mlodzinski v. Lewis,* 648 F.3d 24, 33 (1st Cir.2011)).

Here, qualified immunity is established by examining the officers' conduct under the

second step because "the Supreme Court explicitly avoided defining the contours of the right to

bear arms in both *Heller* and *McDonald*," *id.* (citing *Heller,* 554 U.S. at 634; *McDonald,* 130

S.Ct. at 3049), and has not spoken to the constitutionality of a "'suitable person'" standard like

the one in § 131(d).  Moreover, the First Circuit's and the Supreme Judicial Court's decisions

upholding that provision's constitutionality provided Chief Campurciani with a solid basis to

believe that he acted lawfully when he determined that Plaintiff was not suitable to possess a

Class A LTC and denied Plaintiff's application in January 2016 (Dkt. No. 8-4 at 2).  *See*

*Hightower*, 693 F.3d at 76, 83; *Holden*, 26 N.E.3d at 725, 728.  Put another way, the officers are

entitled to qualified immunity based upon their objectively reasonable belief that they did not

violate Plaintiff's constitutional rights.  *See Pineiro*, 937 F. Supp. 2d at 173 (holding that the

police chief acted reasonably in denying plaintiff's application for an unrestricted LTC because

"this area of [Second Amendment] law is still very much unsettled").  Accordingly, qualified

immunity provides an additional ground for the undersigned to recommend that the officers'

motion to dismiss be granted on Counts 3 through 5.

> C.   <u>Counts 6 through 10:  Claims Against All Defendants for Conspiracy to Commit
> an Act of Extortion & Counts 11 through 13:  Claims Against Individual Police
> Officers for Treason "Against 'This Constitution for the United States of
> America'"</u>

In Counts 6 through 10, Plaintiff claims that all Defendants conspired to commit

extortion "under the guise and color of law" by threatening to charge him with crimes "to which

he is statutorily exempt from prosecution" (Dkt. No. 1 at 13-14).  In Counts 11 through 13,

Plaintiff alleges that the individual police officers committed treason (Dkt. No. 1 at 14-15).

Defendants convincingly argue for dismissal on the ground that Plaintiff lacks authority to bring

criminal charges (Dkt. No. 8 at 11-12).

Extortion and treason are crimes.  *See* U.S. Const. art. III, § 3 and 18 U.S.C. § 2381

(treason); 18 U.S.C. § 1951 (extortion).  Putting aside the lack of alleged facts to support a

conspiracy, it is axiomatic that private individuals, such as Plaintiff, are not permitted to initiate

criminal actions.  *See Diamond v. Charles,* 476 U.S. 54, 64 (1986) (White, J., concurring) ("[A]

private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of

another.") (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)); *Cok v. Costentino,* 876

F.2d 1, 2 (1st Cir. 1988); *Sattler v. Johnson,* 857 F.2d 224, 226-27 (4th Cir. 1988) (a private

citizen has no constitutional right to have other citizens, including state actors, criminally

prosecuted).  *Compare Lawrence v. Thompson,* Civil Action No. 3:14-cv-P919-DJH, 2015 WL

3935837, at *5 (W.D. Ken. June 26, 2015) (dismissing individual plaintiff's claims alleging

crimes, including extortion); *Fennick v. Kittredge,* Civil Action No. 12-10866-DPW, 2013 WL

5236361, at *6 (D. Mass. Sept. 16, 2013) (enjoining plaintiff -- a private citizen -- from asserting

a treason claim against a state trooper in future pleadings where plaintiff lacked standing to bring

a criminal complaint).  Because Counts 6 through 13 fail to state claims upon which relief may

be granted, the court recommends that they be dismissed.

      D.      <u>Counts 1 and 6:  Claims Against the Commonwealth</u>

The Commonwealth is also entitled to dismissal of Counts 1 and 6 under Fed. R. Civ. P.

12(b)(1) based on the lack of subject matter jurisdiction.  "It is well established that any federal

court lawsuit 'in which the State or one of its agencies is named as the defendant is proscribed by

the Eleventh Amendment.'"  *Lovering*, 2016 WL 2977261, at * 2 (quoting *Pennhurst State Sch.*

*& Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  *See also O'Neill v. Baker*, 210 F.3d 41, 47 (1st

Cir. 2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits

by citizens against the state or state agencies.").  Neither of the sovereign immunity exceptions

applies to 42 U.S.C. §§ 1983 and 1985(3).  *See Lovering*, 2016 WL 2977261, at *2 (dismissing

complaint as barred by the Eleventh Amendment where plaintiff claimed that the

Commonwealth violated § 1983 by finding him to be an "unsuitable person" under Mass. Gen.

Laws ch. 140 § 131 and denying him an LTC).

      E.      <u>Counts 14 through 16:  Claims Against Individual Police Officers for "Breach of Trust as a Public Officials."</u>

Plaintiff's final claims allege that Chief Campurciani, Acting Chief Sypek, and Officer

Eickelberg, as public officials, failed to "exercise [their] discretion not arbitrarily, but reasonably

and above all to display good faith honesty and integrity" (Dkt. No. 1 at 16-18).  Plaintiff appears

to restate the assertions he raises in Counts 3 through 5 that these officers violated his

constitutional rights by denying his LTC application.  Therefore, the court recommends that

Counts 14 through 16 be dismissed for the above-stated reasons that support dismissal of Counts 3 through 5.

V.   DISCUSSION:  PLAINTIFF'S MOTIONS (DKT. NOS. 20, 21, 22, 23, 24, 25, 29).

Plaintiff's seven motions address a variety of topics (Dkt. Nos. 20 through 25 and 29). The Commonwealth and the Municipal Defendants raise blanket objections to the motions, including their irrelevance to the claims raised in Plaintiff's complaint, and the absence of "a memorandum of reasons, including citation of supporting authority," in violation of LR 7.1(b) (Dkt. Nos. 26 and 27).  Recognizing that pro se litigants are obligated to comply with procedural rules, *see Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir. 2000), but that they are also afforded wide latitude in the form of their pleadings, *see Tobin v. Univ. of Me. Sys.*, 59 F. Supp. 2d 87, 89 (D. Me. 1999), the court will briefly explain its recommendation that all of these motions be denied.

A.   "Motion to Suspend the 'British Crown Copywright'" (sic) (Dkt. No. 20).

Plaintiff asks the court to "suspend the British Crown Copywright" (sic), which he defines as "British [traditions] incorporated into the American [j]udicial [s]ystem" (Dkt. No. 28 at 3-4), because "it is repugnant" to U.S. Const. art. VI, cl. 2, the Supremacy Clause (Dkt. No. 20).  The clause states that "[t]he Constitution and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby . . . ."  U.S. Const. art. VI, cl. 2.  "It is a 'fundamental principle of the Constitution' that the Supremacy Clause gives Congress the power to preempt state law." *Gill v. JetBlue Airways Corp.*, 836 F. Supp. 2d 33, 38 (D. Mass. 2011) (quoting *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372 (2000).  Because Plaintiff has not demonstrated a

conflict between a statute enacted by Congress and a state law, the court recommends that this motion be denied.

B.    "Motion for this Court to Acknowledge 'This Constitution for the United States of America' is the Supreme Law of this Land; the Commonwealth of Massachusetts; and Especially this Court" (Dkt. No. 21).

In support of this motion, Plaintiff cites the U.S. Const. art. VI, cl. 3, which states:  "[t]he Senators and Representatives . . . , and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support [the] Constitution."  U.S. Const., Art. VI, cl. 3.  The relevance of this motion is not immediately apparent.  To the extent Plaintiff alleges that the Municipal Defendants are not entitled to qualified immunity because their denial of his application for a Class A LTC violated the constitution, that claim is discussed above.  If Plaintiff is arguing that the Massachusetts legislators violated their oath by enacting Mass. Gen. Laws ch. 140, § 131(d) in violation of the Second Amendment to the Constitution, "[s]tate legislators swear to uphold the state and federal constitutions, and a presumption of constitutionality accompanies their enactments."  *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) (citations omitted).  *See Heller v. Doe*, 509 U.S. 312, 320 (1993).  For the reasons previously discussed, the suitability provision of the Massachusetts Gun Control Act did not infringe upon Plaintiff's Second Amendment rights.  Accordingly, the court recommends that Plaintiff's motion be denied.

C.    Motion to have this Court Acknowledge that the "Bar Association," in all its Corporate [E]ntities is an Unlawful Corporate Monopoly Under United States v. Standard Oil (Dkt. No. 22).

This motion apparently was triggered by the amount of fees attorneys quoted to Plaintiff for representing him in this suit (Dkt. No. 28 at 3).  Plaintiff seeks to have the court declare that

the American Bar Association, the Massachusetts Bar Association, "and any other [bar] [a]ssociation operating in the United States is an unlawful corporate monopoly as defined by the . . . Supreme Court in U.S. v. Standard Oil" because of their "exclusive control" over the justice system, which "pass[es] itself off as a governmental agency creating, enacting and adjudicating laws most of which are contrary to the U.S. Constitution" (Dkt. No. 22). Putting aside the absence of an anti-trust claim or request for declaratory relief in Plaintiff's complaint, *see* Fed. R. Civ. P. 8(a), and the motion's lack of relevance to Plaintiff's claims regarding the allegedly wrongful denial of his LTC, the anti-trust laws do not apply to the ABA or to state action. Instead, the anti-trust laws "were designed to prevent restraints to free competition in business and commercial transactions which restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services." *Adams v. Am. Bar Ass'n*, 400 F. Supp. 219, 223 (E.D. Pa. 1975).

"The authority to regulate the practice of law has been left to the States '[s]ince the founding of the Republic . . . .'" *Strigler v. Bd. of Bar Exam'rs*, 864 N.E.2d 8, 12 (Mass. 2007) (quoting *Leis v. Flynt,* 439 U.S. 438, 442 (1979)). As a result, courts have rejected claims that the existence of the American Bar Association violated the Sherman Act. *See Hoover v. Ronwin*, 466 U.S. 558, 573-74 (1984); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1035-36 (3d Cir. 1997). In Massachusetts, the judiciary, which is exempt from anti-trust liability, "regulate[s] the practice of law and the conduct of attorneys . . . ." [19] *In re Kenney*, 504

---

[19] Plaintiff seeks a declaration regarding the Massachusetts Bar Association ("MBA"), which is "a non-profit organization that serves the legal profession and the public by promoting the administration of justice, legal education, professional excellence and respect for the law. A voluntary association, the MBA represents a diverse group of attorneys, judges and legal professionals across the commonwealth." Massachusetts Bar Association, http://www.massbar.org/about-the-mba (last visited Oct. 31, 2016). Plaintiff's complaint appears to be directed at the Massachusetts courts.

N.E.2d 652, 657 (Mass. 1987) (citing *Dist. Attorney for the Plymouth Dist. v. Selectmen of Middleborough,* 481 N.E.2d 1128, 1131 (Mass. 1985)).  *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) ("Where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of the [Sherman] Act can be made out."); *Parker v. Brown,* 317 U.S. 341, 351 (1943) (holding that the Sherman Act was not intended "to restrain state action or official action directed by a state").  *Compare Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1384 (7th Cir. 1992) ("Here the Illinois Supreme Court was acting in a legislative capacity and therefore in the same position as a state legislature, so that the activities in question are exempt from Sherman Act liability.").  Although the Supreme Court found that an attorneys' minimum fee schedule, which the state bar association enforced, violated the Sherman Act's prohibition against price fixing, Plaintiff presents no evidence of a similar fee structure in Massachusetts.  *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 781-93 (1975).

If Plaintiff is protesting his lack of access to the courts, his argument fails.  His complaint, which cogently articulated the facts underlying the denial of his LTC, the alleged constitutional violations, and the remedies that he seeks, was sufficient to institute this law suit.  Accordingly, the court recommends that Plaintiff's motion for acknowledgment of the ABA and the Massachusetts courts as being unlawful monopolies be denied.

D.     "Motion for the Court to Enter a Guilty Verdict Against All Defendants" (Dkt. No. 23).

Plaintiff requests a "directed verdict" of guilt based on the Commonwealth's and the Municipal Defendants' references to themselves as "defendants," which, according to Plaintiff, is an admission of guilt (Dkt. No. 23).  The motion, however, should be denied because the label of "defendant" merely refers to the party being sued in a civil proceeding, and is not an admission

of guilt. *See* Bryan A. Garner, *Black's Law Dictionary* 482 (9th ed. 2009). In addition, a motion

for a "directed verdict," which is a request for a judgment as a matter of law, is a trial or post-

trial motion. *See Chamberlin v. Town of Stoughton*, 609 F. 3d 10, 12-13 (1st Cir. 2010) (memo);

Fed. R. Civ. P. 50.

E.  <u>"Motion for the Court to Acknowledge the Defendants Ronald P. Campurciani,
Mark Sypek and Danielle Eickelberg are in Fact: 'Individuals of Unsound Mind'
and 'Incompetent'" (Dkt. No. 24)</u>.

Plaintiff's motion asks the court, without citation to facts or authority, to "acknowledge"

that the three police officers are "individuals of unsound mind" and are "incompetent" (Dkt. No.

24). Because Plaintiff does not present a basis for the motion, the court recommends that it be

denied. *See* Fed. R. Civ. P. 7(b)(1) (requiring a request for a court order to be made by a motion

that "state[s] with particularity the grounds for seeking the order").[20]

F.  <u>"Motion to Acknowledge that All State, County, and Municipal Magistrates and
Officers of Government Vested with Authority has Vol[u]ntary [sic] Waived their
Right to Remain Silent and/or Refuse to Answer Questions" (Dkt. No. 25)</u>.

Plaintiff asks the court to recognize that "[a]ll those who have sworn an oath to the

Constitution of the Commonwealth and have received compensation for their labor have

voluntarily waived the right to remain silent and/or refuse to answer questions for which they

have received compensation" (Dkt. No. 25). Plaintiff appears to reference the Fifth Amendment,

which says that "[n]o person . . . shall be compelled in any criminal case to be a witness against

himself." U.S. Const. amend. V. Because this is a civil case and because no testimony has been

---

[20] The court notes that questions concerning a witness's competency to testify are reserved for
trial. *See United States v. Hyson*, 721 F.2d 856, 864 (1st Cir. 1983) ("The competency of a
witness to testify is for the trial judge."); Fed. R. Evid. 601; *see also Demoulas v. Demoulas*, 703
N.E.2d 1149, 1158 (Mass. 1998) ("Preliminary questions concerning the qualification or
competency of a person to be a witness are reserved almost exclusively to the [trial] judge.").

taken, the Fifth Amendment right to remain silent is not at issue.  If, by citing Article V of the

Massachusetts Constitution,[21] Plaintiff attempts to limit the officers' Fifth Amendment rights,

"public employment may not 'be conditioned upon the surrender of constitutional rights which

could not be abridged by direct government action.'"  *Broderick v. Police Comm'r of Boston*, 330

N.E.2d 199, 202 (Mass. 1975) (quoting *Keyishian v. Regents of the Univ. of N.Y.*, 385 U.S. 589,

605 (1967)).  For these reasons, the court recommends that the motion be denied.

G.     "Motion for the Trial Judge to Issue a Restraining Order Against the
       Commonwealth of Massachusetts to Force [Plaintiff] to Serve on Jury Duty"
       (Dkt. No. 29).

Plaintiff was summonsed to appear on June 20, 2016 for jury duty at the Hampden

County Hall of Justice in Springfield (Dkt. No. 30-1 at 1).  He sought a restraining order to

enjoin the Commonwealth from "forc[ing] him into involuntary servitude" which he equated

with jury duty (Dkt. No. 29).  He further alleged that "it is NOT a small coincidence" that he was

"attacked with an attempt to subject him to the court['s] jurisdiction" by summonsing him for

jury service "almost immediately" after he "exposed the constructive fraud within the court

system of the Commonwealth . . . ." (*id.*) (emphasis original).  The Commonwealth responds by

arguing that:  (1) the motion is moot; (2) Plaintiff fails to meet the requirements to obtain a

restraining order; and (3) jury service is not involuntary servitude (Dkt. No. 31).  The

Commonwealth's arguments correctly state the law.

The court lacks jurisdiction to decide Plaintiff's motion to enjoin the Commonwealth

from enforcing a summons for him to appear at the Hampden County Hall of Justice on June 20,

---

[21] Article V of the Massachusetts Constitution says, "[a]ll power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

2016 because the motion is moot.  *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70

(1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional

authority extends only to actual cases or controversies.").

> According to the Supreme Court . . . two conditions must be met in order to render a matter moot:  first, there must be no reasonable expectation that the alleged violation will recur; and, second, interim relief or circumstances must have completely and irrevocably halted the effects of the alleged violation.

*Town of Portsmouth v. Lewis*, 62 F. Supp. 3d 233, 238 (D.R.I. 2014), *aff'd,* 813 F.3d 54 (1st Cir.

2016) (citing *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).  Given that the date of jury service

has passed and Plaintiff has not renewed his motion, it is moot.  *See Broughton v. Aldridge*, No.

5:10-CV-231-FL, 2010 WL 2990556, at *2 (E.D.N.C. July 29, 2010) (holding that "the relief

sought is now mooted" where the date of the state court hearing had passed).

If the motion is not moot due to the passage of time, Plaintiff fails to satisfy any of the

requirements for the issuance of a temporary restraining order.

> A temporary restraining order may only be issued if the movant satisfies the following four elements:  (1) a likelihood that it will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) greater harm to the applicant than the adversary's harm resulting from issuance of a temporary restraining order; and (4) the absence of an adverse impact on the public interest.

*Suncom Wireless P. R. Operating Co. L.L.C. v. P. R. Tel. Co.*, No. Civil. 07-1440CCC, 2007 WL

1521226, at *1 (D.P.R. May 23, 2007) (citing *Esso Standard Oil Co. (P. R.) v. Monroig-Zayas,*

445 F.3d 13, 18 (1st Cir. 2006)).  The motion lacks merit because jury service is not

impermissible involuntary servitude in violation of the Thirteenth Amendment.[22]  *See Immediato*

---

[22] The Thirteenth Amendment provides:

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall be duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

*v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459 (2d Cir. 1996) ("The government may . . . require the

performance of 'civic duties' such as . . . jury duty . . . without trenching upon the Thirteenth

Amendment.") (citing *Hurtado v. United States,* 410 U.S. 578, 589 n.11 (1973)).  For these

reasons, the court recommends that Plaintiff's motion be denied.

VI.   Conclusion

For the foregoing reasons, the court recommends that the Commonwealth's motion to

dismiss (Dkt. No. 7) be ALLOWED, the Municipal Defendants' motion to dismiss (Dkt. No. 13)

be ALLOWED, and Plaintiff's motions (Dkt. Nos. 20, 21, 22, 23, 24, 25, 29) be DENIED.[23]

Dated:  November 14, 2016                     /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             UNITED STATES MAGISTRATE JUDGE

---

U.S. Const., amend. XIII, § 1.

[23] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim.
P. 59(b), any party who objects to these findings and recommendations must file a written objection
with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and
Recommendation.  The written objection must specifically identify the portion of the proposed
findings or recommendations to which objection is made and the basis for such objection.  The
parties are further advised that failure to comply with this rule shall preclude further appellate review
by the Court of Appeals of the District Court order entered pursuant to this Report and
Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.
1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d
13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor
Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S.
140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days
after being served with a copy thereof.